UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

AMANDA B.,[1]

      Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

Case No. 1:20-CV-01507-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Amanda B. seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and 1383(g)(3). For the reasons set forth below, that decision is AFFIRMED.

Plaintiff protectively filed for DIB on May 7, 2017, and SSI on May 16, 2017, alleging disability beginning on January 15, 2017. Plaintiff's application was initially denied on June 30,

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

2017, and upon reconsideration on August 3, 2017.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on August 13, 2019, and December 17, 2019.  At that hearing, plaintiff and a vocational expert testified.  The ALJ issued a decision on January 14, 2020, finding plaintiff not disabled within the meaning of the Act.  Tr. 11.

The Appeals Council denied plaintiff's request for review on July 1, 2020.  Tr. 1-3.  Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since January 15, 2017, the alleged onset date. Tr. 14. At step two, the ALJ determined plaintiff suffered from the following severe impairments: lumbar and thoracic degenerative disc disease with disc bulge and protrusion, cervical disc protrusion, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)). Tr. 15.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff could perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, the claimant is only capable of occasional climbing of ramps and stairs, but can never climb ladders/ropes/scaffolds. The claimant can frequently stoop and occasionally crouch, kneel, and crawl. The claimant is capable of simple, routine tasks consistent with a reasoning of two (2) and unskilled work as defined by the dictionary of occupational titles and occasional interaction with co-workers and the public." Tr. 17.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 21. However, at step five, the ALJ found that considering plaintiff's age, education, work

experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including marketing clerk, cleaner housekeeping, and router. Tr. 22. Thus, the ALJ concluded plaintiff was not disabled. Tr. 23.

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discounting her subjective symptom testimony and rejecting medical opinion testimony by her physician.

**I.      Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."

The decision under review is dated January 14, 2020.  Therefore, SSR 16-3p applies.

The ALJ first recognized plaintiff's claims regarding her pain and limitations:

> She says she can sit for only 3-5 minutes, stand for three (3) minutes, and walk for no more than five (5) minutes due to pain (B10E/2-3).  She says she experiences constant pain from her neck to the bottom of her spine/hips (B4E/1). The claimant says she has difficulty performing activities of daily living due to her impairments (Hearing Record). She says lack of insurance affected her ability to seek treatment for her physical and mental health (Hearing Record). She says she experiences side effects from her prescribed medication(s) including drowsiness, blurred vision, and dizziness (B4E/2).

Tr. 17-18.  The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  Tr. 18.  However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

### A.     Medical Impairments

With respect to plaintiff's medical impairments, the ALJ concluded that "[t]he medical evidence of record generally does not support the claimant's allegations to the degree stated." Tr. 18.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ relied upon many portions of the medical record to find that plaintiff's symptoms were not as severe as she claimed.  First, the ALJ noted that, following plaintiff's 2018 surgery, "diagnostic testing" of plaintiff's thoracic spine was "unremarkable."  Tr. 18 (citing B20F/20 ("Unremarkable thoracic radiographs.")).  The ALJ further observed that a January 2019 "lumbar spine MRI shows left paracentral disc protrusion at L4-5 with impingement of the left L5 nerve root; however, no vertebral body height loss or listhesis is noted." *Id.* (citing B13F/3, 5, B16F/16-17 ("No vertebral body height loss or listhesis."), 60).

The ALJ also observed that treatment notes from March 2017, April 2017[2], June 2018, August 2018, and February 2019 "show[ed] the claimant occasionally exhibits mildly reduced

---

[2] The ALJ cited to plaintiff's April 5, 2017 visit with Dr. Hinson, Tr. 18 (citing B8F), who noted, "I recommend conservative treatment" and recommended that plaintiff "take one anti-inflammatory."  Tr. 474.

strength and positive straight leg raise testing, but no gait disturbance and normal sensation throughout her extremities." Tr. 18 (citing B6F/6 ("Full range of motion" in back), B8F/2 ("Ambulates with normal gait"; "Normal sensation to light touch bilateral lower extremities"), B10F/1-2, B12F/14, 56, B16F/27 ("Negative significant gait deviations"), 34 ("4/5 strength" and "no gait disturbance")). Again, in November 2019, the ALJ observed, plaintiff's "treating provider notes she has tenderness to palpation throughout her spine, but 5/5 strength and no gait disturbance." *Id.* (citing B20F/8 ("5/5 strength," "no gait disturbance"), 12).

Additionally, the ALJ relied on the August 13, 2019 independent examination by Dr. Mike Henderson, who found "inconsistencies with the reported pain versus reported function." Tr. 18 (citing B14F/2). In particular, the ALJ pointed to the portion of Dr. Henderson's report that indicated plaintiff "exhibit[ed] no weakness or pain transferring between sitting and standing," *id.* (citing B14F/2), and her gait was nonantalgic, her tandem walking was better than average, she was able to fully squat and stand back up without assistance, and her muscle strength testing was 5/5. *Id.* (citing B14F/2). The ALJ also observed that "while [plaintiff's] Oswestry scores place her at a nearly crippling level, she has no difficulty ambulating and appeared in excellent health during her examination." *Id.* (citing B14F/3).

Finally, the ALJ noted plaintiff's inconsistent back brace use. The ALJ observed that when plaintiff appeared for her examination with Dr. Henderson, she was "wearing a back brace," even though it was not "medically necessary." Tr. 699. In fact, plaintiff had been told nine months before, on November 14, 2018, that she could discontinue using the lumbar back brace she had been given after her surgery in October 2018. *See* Tr. 513 (lumbar back brace provided), 562 ("Patient may discontinue use of lumbar back brace."). And on that date, plaintiff was not wearing a back brace, even though she had not yet been cleared to stop doing so. *See* Tr.

7 – OPINION AND ORDER

555 (October 24, 2018: "Continue back brace"); Tr. 560 (November 14, 2018: plaintiff "reports compliance with lumbar back brace but is not wearing it today").

The ALJ's observations are amply supported by the record. Therefore, the lack of support in the medical record constitutes a clear and convincing reason to discount plaintiff's testimony.

As noted, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins*, 261 F.3d at 857. Here, the ALJ also cited the fact that plaintiff did not follow through on the physical therapy that was recommended, observing that plaintiff "cancel[ed] physical therapy noting she is unable to commit to treatment at the time." Tr. 18 (citing B16F/55). Indeed, plaintiff had a physical therapy evaluation on February 20, 2019, but just one month later, on March 20, 2019, canceled all of her remaining physical therapy appointments, stating she "cannot commit to any of the appointments at this time."[3] Tr. 764. However, other than citing a recent death in the family, plaintiff provided no explanation for why she could not return to physical therapy at all. *Id.* The ALJ properly discounted plaintiff's testimony in light of her "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount plaintiff's subjective symptom testimony regarding medical impairments.

### B. Mental Impairments

With regard to plaintiff's mental impairments, the ALJ also found "the medical evidence of record generally does not support [plaintiff's] allegations to the degree stated." Tr. 19. First,

---

[3] Plaintiff had also been referred to physical therapy in 2017. Tr. 474.

the ALJ rejected the "Mental Medical Source Statement." *Id.* Indeed, nothing in that form had been completed except for a portion titled "Identify your patient's signs and symptoms." Tr. 853. The form contains no diagnosis and is not signed or dated at the bottom; rather, the top of the form merely states, "Pt. reaffirms plan to establish with mental health provider," accompanied by the signature of plaintiff's physician, Dr. Brock Trejo, and the date November 27, 2019. Tr. 852. The ALJ observed, "Of particular note is that despite the asserted signs and symptoms, Dr. Trejo gave no diagnostic impression whatsoever." Tr. 19 (citing B18F/1). And, as the ALJ observed, it is unclear from the check-the-box portion of the form that had been completed whether those were Dr. Trejo's observations or merely what plaintiff reported to him. *Id.*

The ALJ also found that the "signs and symptoms" that had been checked off were not corroborated by the record. Tr. 19. Again, the ALJ cited to portions of the record to support this conclusion, noting "[s]pecifically, [that] the claimant's mental status examinations are generally within normal limits noting occasional anxiety and/or depressed mood but overall the record shows the claimant consistently presents as alert, oriented, memory intact, well-groomed, cooperative, fair to good judgment/insight, normal speech, normal behavior, and normal mood." *Id.* (citing B6F/6, B12F/49,56,152, B14F/2, B16F/40).

Further, the ALJ noted that, "[d]espite the claimant's reports of severe depression and anxiety, she does not seek behavioral counseling." Tr. 19. As the ALJ observed, "in August 2019, the claimant's treating provider referred her to counseling in August 2019, but as of October 2019, the record shows the claimant still had not followed through on the referral." *Id*. Indeed an October 2019 treatment note states, "She was referred in August 2019 to KBBH to address her severe depression GAD/PTSD. She reports she has not been seen by KBBH." Tr.

9 – OPINION AND ORDER

871.  In November 2019, plaintiff was again referred to "KBBH for their further expertise in this matter."  Tr. 874.

Plaintiff testified, "the reason why I haven't seen a psychiatrist is with my insurance . . . you have to show up at 7:30 in the morning and wait in line to get seen that day and there's no way physically and mentally possible that I could do that."  Tr. 53.  However, regarding counseling, plaintiff also testified that she "just felt like it wasn't helping" and did not want to "waste my money."  Tr. 62-63.  She persisted in believing it "would not help," even after she had been approved for coverage under the Oregon Health Plan.  Tr. 63; *see also* Tr. 614 (July 2018 chart note indicating "she has never done any counseling").  Again, the "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a sufficient reason to discount subjective symptom testimony.  *Tommasetti*, 533 F.3d at 1039.

In sum, the ALJ provided at least one valid clear and convincing reason, supported by substantial evidence, to discredit plaintiff's mental health testimony.  The ALJ also provided other reasons to discount plaintiff's testimony, such as plaintiff's activities of daily living and failure to take prescribed medication; however, it is not necessary to address them where the ALJ's other reasons are sufficient.

## II.     Medical Opinion Testimony

Plaintiff claims the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Trejo's opinion.

### A.     Relevant Law

Plaintiff filed for benefits in May 2017.  For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II and 20 C.F.R. § 416.920c governs under Title XVI.  *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).  Under these new regulations, ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive."  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(c).  To that end, controlling weight is no longer given to any medical opinion.  *Revisions to Rules*, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(a), (c)(1)-(5); 20 C.F.R. § 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(1).  "[C]onsistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

11 – OPINION AND ORDER

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b); 20 C.F.R § 416.920c(a),(b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

  **B.**  **Whether the "Specific and Legitimate" Standard Still Applies**

Under existing Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d

821, 830-31 (9th Cir. 1995). The regulations pertaining to applications filed before March 27, 2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit case law, gives treating sources more weight than non-treating sources, and examining sources more weight than non-examining sources. *See Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991); *Magallanes*, 881 F.2d at 751 (adopting the "clear and convincing" and "specific and legitimate" standards for rejecting treating and examining source medical opinions); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc. Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

**C.     Analysis**

The ALJ found Dr. Trejo's opinion was not persuasive. The ALJ first observed that Dr. Trejo, who had treated plaintiff for only one and a half years (Tr. 858), had completed a medical source statement in which he opined that from May 2018 to present, plaintiff could sit, stand,

and/or walk for less than two hours in an eight-hour work day; would need to shift position and/or walk throughout the eight-hour workday; would require approximately 12 unscheduled breaks per day for an average of five minutes; was only capable of a less than full range of sedentary work with the ability to perform no postural activity; would remain off-task 25% or more in a typical workday; and would be absent more than four days per month due. Tr. 21 (citing B19F).

The ALJ concluded that "[t]he record shows the claimant exhibits some signs/symptoms related to her physical condition; however, even the doctor's own treatment notes fail to support his assessment of the claimant." *Id.* (citing B20F). As previously noted, the ALJ referred to Dr. Trejo's records in discounting plaintiff's subjective symptom testimony, observing that plaintiff's "treating provider notes . . . 5/5 strength and no gait disturbance." Tr. 18 (citing B20F/8 ("5/5 strength," "no gait disturbance"), 12).

Thus, in evaluating Dr. Trejo's opinion, the ALJ considered whether the records were supportive of and consistent with his conclusions. Moreover, the ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount Dr. Trejo's opinion. For these reasons, there is no reversible error.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  March 31, 2022.

/s/ Youlee Yim You  
Youlee Yim You  
United States Magistrate Judge